BROCKHOLST MATHEWSON, ADM'R. *v.* STRAFFORD BANK.

Payment of part of a debt after it is due, is not a sufficient consideration for a promise to give time to the principal debtor, so as to discharge his surety.

Notice to charge an endorser's estate, after his decease and before the appointment of an administrator, may be addressed to the deceased at his last residence; but if sent to a brother at a distant place, it will be insufficient, though he is soon after appointed administrator.

Notice to an administrator of the non-payment of a note endorsed by his intestate, left at his boarding place, where he is staying for a few days, will be sufficient, if it is found to have reached him.

A claim against the estate of a deceased person, who was endorser of a note not paid at maturity, may be set off against a claim for money had and received before his decease, though the note did not become payable, and notice of non-payment was not given, till after the decease.

It is not necessary to present a claim to the administrator of an insolvent estate, either for the purpose of an allowance by the commissioner, or to be set off against a claim of the administrator.

ASSUMPSIT for $1300, money had and received. By agreement of the parties the case was tried by the court.

The plaintiff, as administrator of George Mathewson deceased, claimed a balance of $1319.59, upon his intestate's account of deposits and payments in the defendants' bank, which was admitted.

With the general issue the defendants gave notice of set-off, in which they allege, that, at the commencement of the action, the plaintiff, as administrator of the estate of George Mathewson deceased, was indebted to the defendants in the sum of $1875, upon three several promissory notes of said George Mathewson, made in his lifetime, as follows:

1. Note dated July 2, 1860, signed by Alvan White, by which "six months after date, I promise to pay to the order of the Eureka Powder Works, five hundred fifty-three dollars and fifty-two cents, payable at the Strafford Bank, Dover, N. H., value received," endorsed "Eureka Powder Works, by John E. Bickford, Treasurer. George Mathewson."

2. Note dated October 15, 1860, signed by Wm. W. Meader, "six months after date, I promise to pay to the order of the Eureka Powder Works, $1250.00, value received, payable at Strafford Bank." Endorsed, "Eureka Powder Works by John E. Bickford, Treas. George Mathewson."

3. Note dated June 26, 1860, signed by John Trickey, "six months after date, I promise to pay to the order of George Mathewson, at Bank in Boston, $553.15, value received." Endorsed, "George Mathewson. Pay J. K. Fuller, Esq., Cashier, or order, A. A. Tufts, Cashier," and the same will be offset, &c.

The execution of these notes was admitted. George Mathewson died December 8, 1860. Administration on his estate was granted to the plaintiff, on the first Tuesday of January, 1861, and a commission of insolvency issued March 5, 1861. This suit was commenced April 25, 1861. The notes offered in set-off were all due at the date of the writ, though neither was payable at the decease of George Mathewson. By an endorsement on Trickey's note, it appeared that Trickey paid, January 20, 1863, $398.04, and all the interest on the note to that date, and the defendants then said to him, if you pay this, we will not enforce the collection of any thing more against you.

By the protest of a notary at Boston, it appeared that this note was presented for payment at the Suffolk Bank, in Boston, December 29, 1860, and payment was refused for want of funds of the maker, and notices of non-payment, addressed to the defendants and to George Mathewson, were duly forwarded to the cashier of the defendants, and the notice to George Mathewson was duly forwarded by mail to the plaintiff at Providence, R. I., where he resided. George Mathewson, at his decease, had a wife and children residing at Dover, but before December 29, 1860, they had removed, it was supposed, to Providence.

It was objected that the notice to the indorser was insufficient, and that the indorser was discharged by the agreement of the Bank with Trickey. The court being of opinion that the indorser's estate was not

liable to pay this note, find that there is nothing due from the plaintiff to the defendants on the same.

It appeared that an action had been commenced by the Bank against said W. W. Meader, and one Page as his trustee, in which the said Page was adjudged chargeable for $169.22, from which his costs are to be deducted, and the balance is to be allowed on this note.

This note was duly presented for payment and protested, April 18, 1861, and notice duly sent by mail to the plaintiff, at Providence, R. I., where the court find his residence to be, and due notice was given to the other indorsers.

The note of Alvan White was duly presented for payment January 5, 1861, and protested, and notice left for John E. Bickford at his store in Dover, and "notice left for the second indorser, now deceased, at the boarding house, in said Dover, of Brockholst Mathewson, his administrator, addressed to said administrator." The notary testified that he gave the notice to the plaintiff in person, if he was then at his boarding house, if not, that he gave it to the person in charge of the New Hampshire Hotel in Dover, where the plaintiff was then boarding, and asked him to give it to the plaintiff, he cannot remember which.

The plaintiff, in his administration bond, dated January 1, 1861, describes himself as of Dover, in the county of Strafford. He came to the N. H. Hotel, December 31, 1860, and boarded there the ten days next following, but he entered his name on the hotel register as of Rhode Island. The court find the notice sufficient, and the estate of the deceased chargeable with this note.

There was no evidence that any of these claims had been presented to the administrator before they were filed in set-off, nor that either of them had been presented to the commissioner on the estate of George Mathewson, and the plaintiff, for that reason, objected to their allowance; but the court did not allow the objection.

The court found a verdict for the defendants. Exceptions were taken to the rulings, and the questions reserved for decision at the Law Term.

*Wheeler* and *Hall*, for the plaintiff.

*Christie*, for the defendants.

BELL, C. J. The conclusions of the court below, that Mathewson's estate was discharged from further liability, on account of this indorsement of Trickey's note, by the agreement of the Bank, in consideration of his paying part of his note not to call upon him to pay any thing more, we feel reluctantly compelled by the weight of authority to hold to be wrong. That agreement is not in form an agreement to give time to the principal, but its effect is to give an indefinite time.

"By the law the creditor, who, without the consent of the surety, gives time to the principal, or enters into any contract with him, which in its consequences may have the effect of giving time to him, releases the surety from his engagement." Burge on Suretyship, 203. Indeed,

if there is any variation of the contract made without the surety's consent, and which is in effect a substitution of a new agreement, although the original agreement may, notwithstanding such variation, be substantially performed, the surety is discharged. Ib. 215; Ex parte Smith, Chitty on Bills 408; *Watriss* v. *Pierce*, 32 N. H. 560.

To give such agreement the effect of discharging the surety, it is essential that it be a valid and effectual engagement. Burge, Surety. 203; and if the agreement is by parol, it must be upon some valid consideration. *Hoyt* v. *French*, 24 N. H. 198; *Fowler* v. *Brooks*, 13 N. H. 246.

Payment of money which is then due and payable by virtue of an existing valid contract, is not in contemplation of law a sufficient consideration for any new contract. *McCann* v. *Dennett*, 13 N. H. 531. A parol agreement by a creditor to accept part payment of his debt in money in satisfaction of the whole debt, will not be binding upon him for want of consideration, although he actually receive such part payment, and give a receipt for the whole debt. *Fitch* v. *Sutton*, 5 East 232; *Steinman* v. *Magnus*, 11 East 390; *Down* v. *Hatcher*, 10 A. & E. 121; *Wright* v. *Acres*, 6 A. & E. 726; *Seymour* v. *Minturn*, 17 John. 169; *Harrison* v. *Wilcox*, 2 John. 449; *Cumber* v. *Wane*, 1 Stra. 426.

A plea simply alleging the acceptance of a smaller sum of money in satisfaction of a larger, is bad; but a plea alleging the payment of a less sum before the day of payment, or at a different place, or of a specific article, in satisfaction of the whole debt, is a good plea. *Blanchard* v. *Noyes*, 3 N. H. 519; *Colburn* v. *Gould*, 1 N. H. 289; 1 Pars. on Con. 363; 2 Do. 129.

Parsons says, this rule that payment of a small sum is no discharge of a larger, must be so far qualified, as not to include the common case of a payment of a debt by a fair and well understood compromise carried faithfully into effect; but he cites no authority for the position, except the case of *Milliken* v. *Brown*, 1 Rawle ,391, which seems hardly sufficient, with the weight of common sense in its favor, to break the force of the mass of authorities found in the books on the subject.

No sufficient consideration being shown by the case for the agreement not to call on Trickey, it is in law invalid, and can have no operation on the liability of Mathewson's estate by virtue of his indorsement.

II. We regard the rule as settled, that if the indorser of a note dies and the note becomes payable before an executor or administrator is appointed, a notice addressed to the deceased indorser at his late residence, will be sufficient. *Merchants' Bank* v. *Birch*, 17 John. 25; *Stewart* v. *Eden*, 2 Caines 121; *Massachusetts Bank* v. *Oliver*, 10 Cush. 567; Parsons on Bills, 501; Edwards on Bills, 631; *Beals* v. *Peck*, 12 Barb. 245; but if the notice is sent to a place, where the deceased did not reside, it will be insufficient. *Willis* v. *Green*, 5 Hill, 232.

The note of Trickey became due and was protested, December 29, 1860. The plaintiff was appointed administrator January 1, 1861. Notice was sent to the defendants' cashier, addressed to them and to

George Mathewson, the deceased.   The last was then forwarded by the Cashier to the plaintiff at Providence.   It would reach that place on the 31st.   The plaintiff was not then administrator, and a notice to him was nugatory.   If the notice addressed to the indorser had been put in the office at Dover, it would have been sufficient.   Having been sent elsewhere, there was a failure to charge the estate by due notice, and the set-off of this note is inadmissible.

III. The White note was presented for payment on the 5th of January, 1861, five days after the plaintiff was appointed administrator, and the notice was addressed to him as such, and the notice given to him in person, if he was then at his boarding house, and if he was not, it was given to the person in charge of the hotel in Dover, where the plaintiff was then boarding, with the request to give it to the plaintiff, the defendants' cashier being unable to remember which.

This notice was sufficient, if it reached the plaintiff, which was a question of fact to be determined upon the evidence, and the Court see no cause to disturb the finding of the court.   The plaintiff, who knew the facts, was not examined as a witness.

IV. It was objected to the set-off of all these claims, because they were not mutual, since they were not due at the intestate's death, but, were then merely contingent, and the liability became fixed by facts occurring after his decease.

The Bank became indebted to the deceased in his lifetime, and the suit is brought by his administrator, after the liability of the estate had become fixed by demand and notice.

Our statute on this subject is, so far as we perceive, substantially the same as the statute of Geo. II. ch. 22; except that it uses the words "*debts or demands*," instead of the single word "*debts*." The last statute provides that "where there are mutual debts between the plaintiff and defendant," or "if either party sue or be sued as executor or administrator, where there are mutual debts between the testator or intestate and either party, one debt may be set against the other," &c., while the Revised Statutes, ch. 187, secs. 6 & 7, provide that "if there are mutual debts *or demands* between the plaintiff and defendant at the time of the commencement of the plaintiff's action, one debt or demand may be set-off against the other." Mutual debts *or demands*, existing between any person at the time of his death and any other person, may be set-off in actions by or against the executor or administrator.   And we are unable to discover any material difference in the effect of the statute of Massachusetts, Rev. Stat. ch. 96, sec. 12, in the case of suits by executors, which provides that "in actions by executors and administrators, *demands* against their testators or intestates, which belonged to the defendant at the time of his death, may be set-off in the same manner as if the action had been brought by the deceased"; unless it is found in the greater distinctness of the Massachusetts statute.

At the commencement of the plaintiff's action, the claims, which the Bank held against the estate, had become absolute debts, and the right of set-off would be clear under the law of Massachusetts, as was decided in the cases of *McDonald* v. *Webster*, 2 Mass. 498, and *Bigelow* v.

*Folger*, 2 Met. 255, cited by the defendants. In the last case the set-off was allowed, though the note proposed to be set-off was not due, at the commencement of the action, but became due afterward.

Authorities are abundant, that, in the language of the Massachusetts statute, " in suits brought by or against executors, administrators, or trustees in their representative character, no demand shall be set-off, that is due to or from such executors, administrators, or trustees in their own right," and this rule equally applies, whether such demand grows out of transactions relative to his own estate, or that of the deceased. *Fry* v. *Evans*, 8 Wend. 530; *Rost* v. *Taylor*, 20 Johns. 130; *Dole* v. *Cook*, 4 Johns. Ch. 13; *Kilvington* v. *Stevenson*, Willes, 264, n; *Shipman* v. *Thompson*, B. N. P. 180; *Rideout* v. *Brough*, Cowp. 133; *Colby* v. *Colby*, 2 N. H. 419; *Woodman* v. *Barker*, 2 N. H. 474; *Shaw* v. *Gookin*, 7 N. H. 19; *Mercein* v. *Smith*, 2 Hill, 213; *Hills* v. *Tallman*, 21 Wend. 674; *Pitkin* v. *Pitkin*, 8 Conn. 325; *Mead* v. *Merritt*, 2 Paige, 402; *Irving* v. *De-Kay*, 10 Paige, 319; *Merritt* v. *Seaman*, 2 Seld. 168; *Steel* v. *Steel*, 12 Pa. (2 Jones,) 64.

Between this class of cases and those where the transactions were wholly between the deceased and the adverse party, in the lifetime of the former, but the contingent claims have become absolute, and the claims not due have become payable after the decease, there is a marked line of distinction; and we are unable to see any good reason, why such demands should not be set-off against an administrator, when they become absolute and payable. Our statute does not confine the set-off to debts, but provides that demands, that is, claims which are not debts, may be set-off; and though the language has been confined in practice to demands capable of being ascertained by computation, *Drew* v. *Towle*, 27 N. H. 412, it seems to be designed to reach such a case as the present, and the construction, which gives a set-off in such case, is necessary to give reasonable effect to the statute of set-off.

The case of *Rogerson* v. *Ladbroke*, 1 Bing. 93, does not support the position, for which it is cited, that a claim not due at the intestate's death, cannot be set-off against a claim by the administrator for a balance of deposit due at the intestate's death. Ladbroke discounted A's bill for a customer. He had funds of A in his hands. A died on the morning of the day on which the bill became payable. It was held that Ladbroke had a right to set-off the bill against the funds claimed by the administrators. He had a note of A. not due; it was held he could not set-off that, as it was not due when the action was brought.

The same result must be reached upon a consideration of the principles of set-off established for the settlement of the insolvent estates of deceased persons, which extend much farther to claims not due at the time of the set-off. Rev. Stat. ch. 171, sec. 7: "The commissioner shall examine and allow all just demands which the deceased owed that shall be exhibited to him, although such demands may not be payable at the time of such allowance;" and by sec. 9, " when there are mutual demands between the deceased and the person claiming as a creditor, which if due might be legally or equitably set-off against each other, the com-

missioner, if there is a balance in favor of such creditor, shall consider such mutual demands, and allow the creditor only the balance justly due."

The same principle must, of course, be applied upon an appeal from the decision of the commissioner, and though the provision is in terms limited to the case of a balance found due to the claimant, because the commissioner is otherwise merely to reject his claim, yet a fair construction of the statute requires that the same rule of set-off should be applied in all cases of the claims affecting insolvent estates.

In case of mutual demands between an insolvent's estate and a creditor, if the balance is against the creditor, and the executor or administrator sue the creditor at law, he may plead his own demand by way of set-off, and the executor or administrator can recover only the balance. *M'Donald* v. *Webster*, 2 Mass. 498 ; 2 Met. 256 ; 10 Met. 132 ; 15 Mass. 407 ; 3 Pick. 460 ; 4 Pick. 215.

V. It is insisted that these claims cannot be admitted in offset, because they were never presented to the administrator, before they were filed in set-off, nor presented to the commissioner on the estate, but we are of opinion, that no presentment of claim to the administrator has ever been required in the case of an estate represented insolvent, either for the purpose of an allowance of the claim by the commissioner, or to be used as a set-off in an action by the administrator, where the set-off can be used as a matter of defence only, and not as the foundation of a recovery of any balance.    The language of the Revised Statutes, ch. 161, sec. 1, is confined to actions.  "No action against an administrator shall be sustained, &c., unless the demand shall have been exhibited to the administrator and payment demanded."

In the case of an insolvent estate, neither the proof of the claim before the commissioner, nor the offer of it in set-off, has been regarded as within the meaning of the term "action."

*Judgment on the verdict.*